Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT:

**PAUL J. PODLEJSKI**
Anderson, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KATHERINE MODESITT COOPER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| RONALD BUTTERMORE, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 48A05-1309-CR-00472 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MADISON CIRCUIT COURT
The Honorable Thomas Newman, Jr., Judge
Cause No. 48C03-1303-FC-0558
48C03-1109-FD-1769

**May 30, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

Ronald Buttermore ("Buttermore") pleaded guilty in an open plea in Madison Circuit Court to Class D felony battery, Class D felony strangulation, Class D felony criminal confinement, Class C felony criminal confinement, Class A misdemeanor domestic battery, Class D felony intimidation, and Class A misdemeanor interfering with reporting a crime. The trial court ordered Buttermore to serve an aggregate sentence of eleven years with five years executed and six years suspended to probation. The State subsequently filed a petition to revoke Buttermore's probation. The trial court found by a preponderance of the evidence that Buttermore violated the terms of his probation and ordered execution of the previously suspended sentence. Buttermore appeals and argues that there was insufficient evidence to support the revocation of his probation.

We affirm.

**Facts and Procedural History**

On September 27, 2011, after receiving a tip from a concerned citizen, Elwood police officers conducted a welfare check on Chrissy Payne ("Payne") at her residence. After the officers knocked on the door of Payne's house, they saw Payne looking out a nearby window and observed that her lip and nose were bloodied, there was blood on her shirt, and she had a black eye. The officers knocked again. A man later identified as Buttermore looked out the front door but refused to open it. Payne finally opened the door but refused to allow the officers inside the house. While the record is not entirely clear, Buttermore apparently opened the door to the officers, and after Payne's daughter pushed past him to run out to the officers, the officers arrested Buttermore. The officers then took a statement from Payne, who reported that Buttermore had become upset with

2

her, had hit her several times on her body and face, had placed his hands around her neck and applied pressure, and had confined her by force inside her bedroom. Payne stated that her daughter had arrived home from school during the assault and witnessed Buttermore attacking Payne.

That same day, the State charged Buttermore with Class D felony battery, Class D felony strangulation, and Class D felony criminal confinement in cause number 48C03-1109-FD-001769 ("cause number FD-1769"). The trial court held an initial hearing three days later, on September 30, 2011, at which it issued a no-contact order prohibiting Buttermore from contacting Payne. Buttermore posted bond, and on August 27, 2012, when Buttermore failed to appear for trial, the trial court issued a warrant for his arrest.

Some seven months later, on March 14, 2013, Anderson police officers were dispatched to the parking lot of a local mall in response to an apparent battery. When officers arrived at the scene, they spoke with Debra Caplinger ("Caplinger"), who reported that on March 9, she had been attacked by Buttermore, her live-in boyfriend at the time. Caplinger stated that, during an argument, Buttermore shoved Caplinger, hit her in the face multiple times, and knocked her to the ground. Though Caplinger required medical treatment for her injuries, Buttermore refused to allow Caplinger to leave the house, taking her cell phone, the house phone, and her car keys. After a few days, Caplinger convinced Buttermore to allow her to leave the house, and she subsequently called the police. At the scene, the officers observed that Caplinger had dark bruising around both eyes and most of her face.

3

The police served the outstanding warrant on Buttermore at his home and arrested him. On March 15, 2013, the State charged Buttermore with Class C felony criminal confinement, Class A misdemeanor domestic battery, Class D felony intimidation, and Class A misdemeanor interfering with the reporting of a crime under cause number 48C03-1303-FC-000558 ("cause number FC-558"), all arising from the incident involving Caplinger. On the same date, the trial court issued a no-contact order prohibiting Buttermore from having any contact with Caplinger.

On April 22, 2013, Buttermore pleaded guilty to all counts in both causes pursuant to an open sentence plea that capped the executed portion of his sentence at five years. The trial court held a sentencing hearing on May 6, 2013. At the hearing, Payne testified that Buttermore's attack caused her to suffer a crushed nose, concussion, four broken ribs, and a black eye. Payne further testified that Buttermore threatened to kill her as he strangled her. Caplinger testified that Buttermore's battery caused her to suffer two black eyes, a cut, a bruised face, and a scar. She also stated that, for several days immediately following the attack, she was too afraid of Buttermore to leave the house.

In cause number FD-1769, the trial court imposed concurrent three-year sentences for each of Buttermore's three Class D felony convictions, for a total of three years. In cause number FC-558, the trial court ordered Buttermore to serve concurrent sentences of eight years on his Class C felony conviction, three years on his Class D felony conviction, and one year on both Class A misdemeanor convictions, for a total sentence of eight years. The trial court ordered that Buttermore's sentence under cause number FC-558 be

4

served consecutive to his sentence under cause number FD-1769, for an aggregate sentence of eleven years, with five years executed and six years suspended to probation.

At the sentencing hearing, the trial court orally advised Buttermore of the conditions of his probation, including the conditions that he "obey all the laws of the State of Indiana and United States" and that he "behave well in society." Tr. p. 55. The specific terms of Buttermore's probation prohibited him from having contact with Payne or Caplinger. The day of the sentencing hearing, in the presence of his probation officer, Buttermore signed the probation order under the following language: "I have received and read this copy of this Probation Order. I understand this Probation Order and agree to comply with all conditions imposed by the Court." State's Ex. 7; Tr. p. 85.

At 5:35 p.m. on the day of Buttermore's sentencing hearing, Caplinger received a text message that read, "why oh why. I treated you good. Cool. I know the cops and I'll get your info when I get out and I'm coming for you bitch." Tr. p. 66; State's Ex. 1. On June 10 and June 27, 2013, the State filed notices of probation violation in each of Buttermore's two causes. The trial court held an evidentiary hearing on August 26, 2013. At the hearing, Caplinger testified about the text message she received and further testified that Buttermore called Caplinger at least fifteen times after he was sentenced and sent her a birthday card in July 2013. Caplinger identified the handwriting and signature on the card and envelope as Buttermore's, and the envelope contained Buttermore's name and prison address. Randy Tracy ("Tracy") an investigator with the prosecutor's office, testified that the text message to Caplinger originated from a phone that belonged to Dean Johnson, who was a fellow inmate of Buttermore's. Johnson told Tracy that Johnson gave

5

the phone to Buttermore. Tracy also testified that Johnson identified Buttermore in a photo lineup as the person to whom he gave the cell phone. Surveillance video from the jail showed Johnson and Buttermore together in a jail cell, passing an item back and forth to one another. Tracy testified that the video depicted Buttermore handing the item back to Johnson at 5:35 and 42 seconds. Caplinger received the text message at 5:35 p.m.

After the State presented its evidence, Buttermore testified that he was unaware of any prohibition against contacting Caplinger because he is unable to read and did not read the terms of his probation order. Buttermore testified that he knew that he was not permitted to contact Caplinger while on probation, but that he did not know the restriction was in place while he was in jail. He also testified that he never texted Caplinger from jail or had possession of any telephone while in jail.

After finding by a preponderance of the evidence that Buttermore violated the conditions of his probation by committing the new offenses of invasion of privacy and intimidation, the trial court revoked Buttermore's probation and ordered that the suspended portion of his sentence be executed in the Department of Correction.

Buttermore now appeals.

**Discussion and Decision**

The trial court's decision to revoke probation is reviewed for an abuse of discretion. Rosa v. State, 832 N.E.2d 1119, 1121 (Ind. Ct. App. 2005). "An abuse of discretion occurs if the decision is against the logic and effect of the facts and circumstances before the court." Id. Under Indiana Code section 35-38-2-3(a), a court may revoke probation if a person violates a condition of probation during the

6

probationary period. In addition, under Indiana Code section 35-38-2-1(b), the court may revoke probation if a probationer commits any additional crime.

Buttermore argues that there was insufficient evidence for the trial court to revoke his probation. When the sufficiency of evidence is challenged, we will neither "reweigh the evidence nor reassess witness credibility." Whatley v. State, 847 N.E.2d 1007, 1010 (Ind. Ct. App. 2006) (citing Marsh v. State, 818 N.E.2d 143, 148 (Ind. Ct. App. 2004)). Rather, we look to the evidence most favorable to the State and affirm the judgment if "there is substantial evidence of probative value supporting revocation." Id. The State's burden of proof regarding alleged probation violations is proof by a preponderance of the evidence. Id.

Buttermore contends that he "was not properly and sufficiently advised of the prospective standard of conduct that was expected of him as a result of his suspended sentence." Appellant's Br. at 6. Specifically, he argues that, because he was unable to read the terms of his probation order and neither his probation officer nor the trial court specifically orally advised him that he was not to contact Payne or Caplinger, he did not have sufficient notice that he was prohibited from contacting Caplinger. He argues, "in order for Buttermore's revocation to survive appeal, he must have been orally advised of the conditions of his probation and further acknowledge that he understood those conditions on the record, which certainly is not the case." Id. at 8.

The record reveals that on May 6, 2013, at his sentencing hearing, when the trial court asked Buttermore if he had "had a chance to read the pre-sentence report," Buttermore responded, "Yes, sir." Tr. p. 19. On August 7, 2013, Buttermore also

answered, "Yes, sir," to the trial court's question, "[c]an you read, write, and understand the English language pretty well?" Tr. p. 58. Buttermore also answered, "Yes, I did," when the trial court asked if he had read and understood the State's notice of violation of suspended sentence. Id. It was not until Buttermore's revocation hearing on August 26, 2013, after the State had presented its evidence, that Buttermore claimed he was unable to read. The trial court assigned little credibility to Buttermore's self-serving statement that he could not read and found by a preponderance of the evidence that Buttermore violated the terms of his probation by committing invasion of privacy. Under these facts and circumstances, we conclude that there was sufficient evidence to support the trial court's conclusion that Buttermore committed invasion of privacy and, in doing so, violated the terms of his probation. Buttermore's argument is merely an invitation to reweigh the evidence, which we will not do. See Pokes v. State, 971 N.E.2d 178, 179 (Ind. Ct. App. 2012).

Even if we were to conclude that Buttermore had no notice of the probation terms prohibiting him from contacting Caplinger and Payne, Buttermore still would not prevail on his claim that the evidence is insufficient to support the revocation of his probation. In Braxton v. State, 651 N.E.2d 268, 270 (Ind. 1995), our supreme court held that "[t]he law of this state is well-established that although a trial court must specify the conditions of probation in the record, it is always a condition of probation that a probationer not commit an additional crime." (Internal citations omitted). During the May 6, 2013 hearing, the trial court orally advised Buttermore that a term of his probation was that he was not to commit any other crimes. Also on May 6, 2013, Buttermore signed a

8

statement on a probation order affirming that he understood that he was prohibited from contacting Caplinger or Payne and was to obey all state and federal laws. Yet, incredibly, later that very day, Buttermore sent a threatening text message to Caplinger using a borrowed cell phone.

Buttermore claims that the trial court failed to orally advise him that he was not to contact the victims. However, even if the trial court found Buttermore's claimed inability to read to be credible, the notice of Buttermore's violation of his probation was based in part on evidence that Buttermore committed Class D felony intimidation when he sent the text message to Caplinger. The trial court found by a preponderance of the evidence that Buttermore committed the crime of intimidation, which is itself a violation of the terms of Buttermore's probation, independent of his commission of the crime of invasion of privacy. Therefore, even if Buttermore was unaware of the no-contact order, and there is no credible evidence of this claim, there was sufficient evidence to support the trial court's revocation of Buttermore's probation. See Hubbard v. State, 683 N.E.2d 618, 622 (Ind. Ct. App. 1997) (noting that a single violation is sufficient to warrant revocation of probation). Buttermore's argument otherwise amounts to a request that we reweigh the evidence, which we will not do. See Pokes, 971 N.E.2d at 179.

For all of these reasons, we conclude that the trial court did not abuse its discretion by finding that there was sufficient evidence to revoke Buttermore's probation.

Affirmed.

FRIEDLANDER, J., and PYLE, J., concur.